IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

STEVEN SEVAN GUIDRY, §
§
        Plaintiff, §
§
v. § CIVIL ACTION NO. H-11-1589
§
THE CITY OF HOUSTON, and §
BRENTON DELON GREEN, §
Individually and in his §
Official Capacity, §
§
        Defendants. §


MEMORANDUM AND ORDER


    Pending is Defendants City of Houston's and Brenton Green's

Motion for Summary Judgment (Document No. 36).[1]   After carefully

_____

    [1] Also pending is Plaintiff's Motion to Exclude Trial
Testimony of Defendants' Expert Witness Christopher D. Duncan
(Document No. 24) and Defendants City of Houston's and Brenton
Green's Motion to Exclude Expert Witness and/or Testimony (Document
No. 25).  Plaintiff filed no response in opposition to Defendant's
motion, and it is therefore deemed unopposed pursuant to Local Rule
7.4.  See Watkins v. Tex. Dept. of Criminal Justice, Civ. A. No. H-
03-5698, 2006 WL 6869324, at *1 (S.D. Tex. May 11, 2006) (granting
motion to exclude expert because no response was filed in
opposition); Nat'l W. Life Ins. Co. v. W. Nat'l Life Ins. Co.,
Cause No. A-09-CA-711-LY, 2011 WL 692976, at *3 (W.D. Tex. Feb. 18,
2011) (same); Meza v. Livingston, Cause No. A-05-CA-1008-LY, 2008
WL 7716805, at *1 (W.D. Tex. Oct. 22, 2008) (same).  Moreover,
because Plaintiff has the burden of establishing the admissibility
of his own expert, Plaintiff's failure to respond fails to satisfy
Plaintiff's burden of showing by a preponderance of the evidence
that the testimony is admissible.  See Houston-Hines v. Houston
Indep. Sch. Dist., 2006 WL 897209, at *3 ("The burden is on the
party offering the expert testimony to establish by a preponderance
of the evidence that it is admissible.") (citing Moore, 151 F.3d at
276).  Defendants' motion is therefore GRANTED.

    Because Plaintiff has elected to narrow his case, see n.7, and
does not seek to hold Officer Green liable in his individual

considering the motion, response, reply, and applicable law, and
having heard and considered the oral arguments of counsel, the
Court concludes for the reasons that follow that Defendants' motion
should be granted.

## I. Background

On the night of February 24, 2010, around 11:00 p.m., Officer
Brenton Delon Green ("Officer Green") attempted to conduct a
traffic stop of Plaintiff Steven Sevan Guidry ("Plaintiff") for a
minor traffic violation which, as events unfolded, resulted with
the officer firing one shot at Plaintiff, hitting him in the neck.
Plaintiff, who survived the shooting, and Officer Green present
conflicting versions of the events that culminated in the
shooting.[2]

In his complaint, Plaintiff alleges that he and Jesse Sanders
were on their way to Sanders's home, turning onto Sanders's street,
when Officer Green pulled up behind them and activated the police

---

capacity but only seeks to hold the City liable on a ratification
theory, Duncan's report--which was not available to the City during
its investigation of the incident--has no relevancy to Plaintiff's
claim that the City ratified Green's alleged use of excessive force
and the report therefore is not considered in this Memorandum.  In
view of the Court's decision on Defendants' Motion for Summary
Judgment, it becomes unnecessary to rule on Plaintiff's Motion to
Exclude the Trial Testimony of Duncan.

[2] Plaintiff's passenger, Jesse Sanders ("Sanders"), was seated
in the truck next to him.  There is some evidence that Sanders was
inebriated, and no evidence that he saw the shooting.

car's overhead lights.  Because they were just a few houses away from Sanders's house, Plaintiff alleges that he put his hand out the window to signal that he would pull into the driveway of Sanders's house, which he proceeded to do.  Plaintiff testified that after stopping his truck, he sat with his hands on the steering wheel, waiting for instructions from Officer Green.[3] Officer Green ran up to the truck, and without saying a word, opened the door, yanked Plaintiff out of the car, threw him on the ground, and shot him in the neck.[4]

Officer Green's affidavit states that he was on solo patrol in a high crime area when he observed Plaintiff's truck make a left turn without using a turn signal, so Officer Green got behind the truck and activated his lights.[5]  The truck continued down the street, so Officer Green activated the audible siren several times and instructed Plaintiff to pull over using the PA system. Plaintiff stuck his left hand out of the window at one point and pointed down the street.  Officer Green became suspicious that Plaintiff might want to flee or had something in his possession he did not want the officer to find.  Plaintiff stopped in front of 5241 Pederson Street on the left side of the roadway.  Officer Green observed Plaintiff look back at him, and observed Plaintiff

---

[3] Document No. 37, ex. A at 7 of 10.

[4] Id., ex. A at 2 of 10, 7-8 of 10; ex. B at 19-20.

[5] Document No. 36, ex. C at 1.

and the passenger moving side to side.  Officer Green concluded that they might be concealing drugs or a weapon or were in the middle of a dispute.  Officer Green therefore decided to exit his vehicle, and, with his gun drawn, approached the truck and asked for Plaintiff's driver's license and insurance.  Plaintiff refused, so Officer Green ordered him to get out of the truck, which Plaintiff also refused to do.  Officer Green states that Plaintiff was "cussing at me and in an abrasive tone asked me why I stopped him."   Officer Green became alarmed by Plaintiff's refusal to follow his instructions, particularly given that Officer Green was pointing his gun at him, and was concerned that Plaintiff might have a weapon.  Officer Green states that he was also not sure if the passenger was safe with Plaintiff, since he had witnessed what he thought might be a dispute between the two.  So Officer Green decided to pull Plaintiff out of the truck by the upper left sleeve area of his jacket.  Plaintiff was trying to pull himself back into the vehicle, and Officer Green observed him reach "into his jacket towards his waistband area" and turn away from Officer Green. Officer Green believed that Plaintiff was reaching for a weapon, so he discharged his gun once.  He then put Plaintiff on the ground, and handcuffed and searched both him and Sanders, who Officer Green states cooperated with his commands.  Officer Green did not find a weapon on Plaintiff in his search.[6]

---

[6] Document No. 37, ex. E.

4

Plaintiff seeks damages under 42 U.S.C. § 1983 from the City of Houston through claims against Officer Green in his official capacity, alleging a constitutional violation based on excessive force, and against the City of Houston for its ratification of Officer Green's actions.[7]

## II.   Summary Judgment

## A.   Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Once the movant carries this burden, the burden shifts to the nonmovant to show that

---

[7] Plaintiff's complaint alleges that "Plaintiff's constitutional rights under the Fourth, Eighth, and Fourteenth Amendment of the Constitution of the United States to be free from unreasonable arrest, unreasonable seizure, unreasonable and excessive force, cruel and unusual punishment, and his right to due process and equal protection under the law, were all violated by Defendant Green's actions."  Document No. 1 ¶ 4.  Plaintiff's complaint included a claim against Officer Green in his individual capacity, id. ¶ 2, but in response to summary judgment, Plaintiff elected to narrow his case to his excessive force claim only, seeking to hold liable on a ratification theory only the City and Officer Green in his official capacity.  This is consistent with Plaintiff's earlier admission under Rule 36 that his claims against Officer Green "are in his official capacity and not in his individual capacity." Document No. 36, ex. E at 2.  Hence, Plaintiff did not oppose Officer Green's claim of qualified immunity and, at oral arguments on the motion for summary judgment, Plaintiff's counsel confirmed that Plaintiff did not wish to pursue a claim against Officer Green in his individual capacity.

summary judgment should not be granted.  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986).  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-

<u>Macemon, Inc.</u>, 992 F.2d 1408, 1413 (5th Cir. 1993).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  <u>Id.</u>  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  <u>Anderson</u>, 106 S. Ct. at 2513.

B.   <u>Municipal Liability</u>

A governmental entity can be sued and subjected to monetary damages and injunctive relief under section 1983 only if its official policy or custom causes a person to be deprived of a federally protected right.  <u>Monell v. Dep't of Soc. Servs.</u>, 98 S. Ct. 2018, 2037-38 (1978).  A municipality may not be held liable under section 1983 on the basis of *respondeat superior* or vicarious liability.  <u>Id.</u>  Municipal liability under a section 1983 claim requires proof of (1) a policy maker; (2) an official policy; and (3) a violation of a constitutional right whose moving force is the policy or custom.  These three elements are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself.  <u>Id.</u>  A high standard of proof is required before a municipality can be held liable under § 1983.  *See* <u>Snyder v. Trepagnier</u>, 142 F.3d 791, 796 (5th Cir. 1998), *cert. granted in*

7

*part*, 119 S. Ct. 863 (1999); *see also* <u>Bd. of Cty. Comm'rs of Bryan Cty, Okla. v. Brown</u>, 117 S. Ct. 1382, 1394 (1997) ("Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability [inappropriately] collapses into *respondeat superior* liability").

A city also can be held liable based on the theory of ratification. "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." <u>City of St. Louis v. Praprotnik</u>, 108 S. Ct. 915, 926 (1988). "The theory of ratification, however, has been limited to extreme factual situations. . . . Therefore, unless the subordinate's actions are sufficiently extreme--for instance, an obvious violation of clearly established law--a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom." <u>World Wide Street Preachers Fellowship v. Town of Columbia</u>, 591 F.3d 747, 755 (5th Cir. 2009) (citations and quotation marks omitted). "[A] policy maker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." <u>Peterson v. City of Fort Worth, Tex.</u>, 588 F.3d 838, 848 (5th Cir. 2009) (citing <u>Coon v. Ledbetter</u>, 780 F.2d 1158, 1161-62 (5th Cir. 1986)).

C.   Analysis

   1.   Officer Green

    As observed above, a municipality may not be held liable under section 1983 on the basis of *respondeat superior* or vicarious liability.  Monell v. Dep't of Soc. Servs., 98 S. Ct. 2018, 2037-38 (1978).  Plaintiff's action against Officer Green in his official capacity is in essence an action against the City.[8]  Plaintiff does not allege nor produce any evidence, however, to show that Officer Green is a policymaker whose actions may be directly imputed to the City under § 1983.  *See* Brooks v. George Cnty., Miss., 84 F.3d 157, 165 (noting that "even a single decision may create municipal liability *if* that decision were made by a final policymaker responsible for that activity") (emphasis in original) (quotation marks and citations omitted).  Accordingly, under Monell, Officer Green's actions alone do not form the basis for a § 1983 recovery against the City of Houston and hence, Plaintiff's action against Officer Green in his official capacity is in and of itself to no avail.

---

    [8] *See* Brandon v. Holt, 105 S. Ct. 873, 878 (1985) ("a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents"); Goodman v. Harris Cnty., 571 F.3d 388, 396 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1143 and 130 S. Ct. 1146 (2010) ("official capacity suits are really suits against the governmental entity").

2.   <u>Ratification</u>

The essence of Plaintiff's case--as Plaintiff narrowed his suit in responding to Defendant's motion--is that the City of Houston is liable based on its alleged ratification of Officer Green's use of unconstitutional excessive force.[9]   Plaintiff produces summary judgment evidence of the Houston Police Department's internal investigation report summary on the shooting, which was instigated pursuant to a complaint from the Chief of Police.[10]   The report notes that Plaintiff refused to give a statement, and Jesse Sanders did not observe the shooting, and the report therefore necessarily relies only on Officer Green's statements, with "no evidence to contradict Officer Green's statements regarding his actions in this shooting."[11]   The report describes Officer Green's testimony, as the Court has outlined

---

[9] Document No. 37.  Defendants argue that Plaintiff raises the ratification argument improperly for the first time in his response to summary judgment, contending it was not adequately pled. Document No. 40 at 1.   Plaintiff's Complaint alleges that "Defendant City of Houston ratified Defendant Green's fraudulent and unconstitutional acts by authorizing the criminal prosecution of Plaintiff, failing to investigate or adequately investigate the shooting, and failing to discipline Defendant Green for his actions."  Document No. 1 ¶ 29.  This is fair notice to Defendants of Plaintiff's contention that the City by its conduct ratified, and hence is liable for Officer Green's alleged use of excessive force.

[10] Document No. 37, ex. G at COH000059-61.

[11] <u>Id.</u>   Plaintiff does not dispute that Officer Green's testimony was the only account of the events available to the committee at the time of the investigation.

10

above: the circumstances surrounding the stop, Plaintiff's refusal to exit the vehicle and his belligerent responses to Officer Green, and then how Plaintiff reached his hand into his jacket and turning his head away as Officer Green was pulling him out of the truck, leading Officer Green to conclude he was retrieving a weapon.  The report concludes that, "Based on the evidence, it is recommended that the **Discharge Firearms—Citizen Injury** be classified as **INTENTIONAL/JUSTIFIED.**"[12]

This internal investigation report--prepared without the benefit of a requested statement from Plaintiff himself, who remained silent--does not describe the kind of extreme factual scenario that would raise so much as a genuine issue of material fact that the City ratified the use of unconstitutional excessive force against Plaintiff.  The City reasonably relied on Officer Green's statement, which was the only version of events available to it.  As the investigation committee understood the incident, Plaintiff was belligerent and refused to follow Officer Green's instructions, and then reached into his pocket and turned away as Officer Green pulled him out of the truck.  The investigation committee believed that Officer Green reasonably feared for his life when he saw Plaintiff reach for what the officer feared was a weapon, and Green therefore discharged his weapon based on this reasonable fear.  "An officer's use of deadly force is not

---

[12] <u>Id.</u>, ex. G at COH 000061.

excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." <u>Manis v. Lawson</u>, 585 F.3d 839, 843 (5th Cir. 2009) (citations omitted).[13]  Plaintiff has not raised a genuine issue of material fact for the claim that the City ratified the use of excessive force against Plaintiff.  *See* <u>Coon</u>, 780 F.2d at 1161-62 (affirming directed verdict in favor of county on a § 1983 ratification claim when the sheriff defended his deputies, accepting their version of events which was not "manifestly indefensible" and concluding that "it is unreasonable to infer from his defense of his men a county policy approving reckless police behavior"); <u>Peterson</u>, 588 F.3d at 848 (affirming summary judgment for the City of Fort Worth denying the ratification theory when the chief of police concluded after an investigation that the conduct of an officer who struck a handcuffed individual with his knee and another officer who failed to report the use of force complied with the department's policies because this did not present an "extreme factual situation" for which ratification is limited, even though genuine issues of fact remained about whether the officer's conduct was reasonable); <u>World</u>

---

[13] *See also* <u>Ontiveros v. City of Rosenberg, Tex.</u>, 564 F.3d 379, 385 (5th Cir. 2009) (finding no excessive force when officer shot and killed suspect because he reached for his boot); <u>Young v. City of Killeen, Tex.</u>, 775 F.2d 1349, 1352-53 (5th Cir. 1985) (finding no excessive force when officer shot and killed suspect after suspect reached to the floorboard of car after officer commanded him to step out of the vehicle).

Wide Street Preachers Fellowship, 591 F.3d at 750, 756 (affirmed district court's determination that the town could was not found liable on a ratification theory for defending the police officer's actions in a letter, which letter stated the town's understanding as to what the officer did and why such conduct was in accordance with the law, even if the Court later determined that the officer did not act as described in the letter).[14]

---

[14] In contrast, Grandstaff v. City of Borger, Tex., 767 F.2d 161 (5th Cir. 1985), provides an example of the "extreme" circumstances required as a basis for ratification.  In Grandstaff, police officers in a patrol car signaled a truck to pull over, which the driver did not do, resulting in a high speed chase that by happenstance ended on the farm of an entirely innocent farmer. The entire night shift police department converged on the area, and ended up fatally shooting the hapless farmer upon whose land they had all descended.  Although no prior misconduct within the police department was found to establish a policy or custom, the opinion concludes that:

> The evidence does prove repeated acts of abuse on this
> night, by several officers in several episodes, tending
> to prove a disposition to disregard human life and safety
> so prevalent as to be police policy or custom.  The
> entire six officers of the night shift of the City of
> Borger participated in this wild barrage, when the
> exercise of the least care and the use of any rational
> and organized plan would have avoided the death of James
> Grandstaff. . . . . The disposition of the policymaker
> may be inferred from his conduct after the events of that
> night.  Following the incompetent and catastrophic
> performance, there were no reprimands, no discharges, and
> no admissions of error.

Id. at 171.

13

III.   Order

Accordingly, it is

ORDERED that Defendants City of Houston's and Brenton Green's Motion for Summary Judgment (Document No. 36) is GRANTED, and Plaintiff Steven Sevan Guidry's claims against Defendants The City of Houston and Brenton Delon Green are DISMISSED with prejudice.

The clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas on this 17th day of January, 2013.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

14